IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER BUSSLER JAMES and MELISSA BUSSLER MILLER, | : | |
| Plaintiffs, | : | CA 12-423-MJ-C |
| v. | : | IN ADMIRALTY |
| M/V "EAGLE EXPRESS," #961647, her engines, tackle, furniture, and appurtenances, etc., *In Rem*, and GUY H. BUSSLER, an individual, EAGLE EXPRESS CHARTERS, L.L.C., a Mississippi limited liability company, and WELLS FARGO BANK, NATIONAL ASSOCIATION, successor-in-interest to Southeast Bank, *In Personam*, | : : : : : | |
| Defendants. | : | |

MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant Eagle Express Charters, L.L.C.'s motion to vacate the arrest of the M/V "EAGLE EXPRESS" (Official No. 961647) ("the vessel"), pursuant to Supplemental Admiralty Rule E(4)(f), and brief in support (Docs. 18 & 19), both filed July 10, 2012; the plaintiffs' response and brief in opposition (Docs. 21 & 22), both filed July 18, 2012; and Eagle Express Charters' reply (Doc. 25), filed July 19, 2012. A hearing on the motion was conducted by the undersigned on July 20, 2012, and after a careful review of the parties' filings and presentations at that hearing, the motion is **GRANTED**.

While the Court retains jurisdiction over the *in personam* claims in this matter pursuant to 28 U.S.C. § 1332, the *in rem* claims against the vessel are **DISMISSED**.   The

arrest of the vessel (*see* Docs. 12, 13, 15) is **VACATED**, and accordingly, the

appointment of Saunders Yachtworks as substitute custodian (*see* Doc. 11) is

**RESCINDED**.[1]

---

[1]     As the parties are no doubt aware, this case was randomly assigned to the undersigned for all purposes, including trial.   (*See* Doc. 6; *see also id.* ("In accordance with 28 U.S.C. § 636(c), the Magistrate Judges of this District Court have been designated to conduct any and all proceedings in a civil case, including a jury or non-jury trial, and to order the entry of a final judgment, upon the consent of all parties.").)   Inasmuch as the parties, to date, have not returned to the Clerk of Court a Request for Reassignment to a United States District Judge (*see id.*), there presently exists implicit consent to the undersigned conducting all proceedings in this case.  *See Roell v. Withrow*, 538 U.S. 580, 590 (2003) ("We think the better rule is to accept implied consent where, as here, the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge.  Inferring consent in these circumstances thus checks the risk of gamesmanship by depriving parties of the luxury of waiting for the outcome before denying the magistrate judge's authority.   Judicial efficiency is served; the Article III right is substantially honored."); *cf. Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1350-51 (11th Cir. 2007) (finding that an extended period "of continual participation in pretrial proceedings justifies the inference of consent from a litigant aware of the need to consent").

Implicit consent notwithstanding, a United States Magistrate Judge, after granting a Writ of Seizure, possess the authority to vacate the seizure of a vessel and order the immediate release of a vessel.   The procedural background provided by the Fifth Circuit in *Bargecarib Inc. v. Offshore Supply Ships Inc.*, 168 F.3d 227 (5th Cir. 1999) (on appeal from the Southern District of Texas), is informative in this regard:

> On July 10, BargeCarib filed a Verified Complaint alleging that Offshore breached the Charter and asserting a maritime lien on the vessel to secure the performance of the Charter.   The complaint asserted an in rem claim against the Sovereign and an in personam claim against Offshore.   The magistrate judge granted a Writ of Seizure, and the U.S. Marshal arrested the Sovereign. Offshore filed an emergency motion to vacate the arrest, and Global filed various motions, including an emergency motion to vacate the arrest and dismiss BargeCarib's complaint.

> The magistrate judge held a hearing to allow BargeCarib to show probable cause for the arrest, and found that BargeCarib's Complaint was factually inaccurate [because there was no present demand on the defendant].   The magistrate judge ordered vacature of the seizure and immediate release of the vessel.   BargeCarib objected, claiming that vacating the order was a dispositive action beyond the

## Applicable Background

On June 28, 2012, the plaintiffs, two sisters, filed their verified complaint (Doc. 1) to enforce the judgment of the Chancery Court of Harrison County, Mississippi, in *In the Matter of the Estate of Lowell Edward Bussler*, regarding the estate of the their deceased father, against Defendant Guy Bussler, their brother, in the amount of $323,235.33 (*id.*, ¶ 12; *see also id.*, ¶¶ 9-14).[2]  The verified complaint asserts two bases for jurisdiction:

---

scope of the magistrate judge's authority.   The magistrate judge disagreed, and released the Sovereign.

BargeCarib appealed the magistrate judge's order to the district court.   The district court vacated the magistrate judge's order vacating seizure.   BargeCarib then moved for return of the Sovereign.   Offshore and Global moved for reconsideration and objected to the return of the vessel.   The district court granted the motion to reconsider.   After reviewing the magistrate judge's order *de novo*, the district court entered an order accepting and adopting the magistrate judge's order vacating seizure and denying BargeCarib's motion for return of the vessel. . . .

*Id.* at 229 (footnotes omitted); *see also Taino Lines, Inc. v. M/V Constance Pan Atl.*, 982 F.2d 20, 22 (1st Cir. 1992) (noting that the Magistrate Judge issued an order directing that the vessel be arrested, pursuant to Supplemental Admiralty Rule C(3); appointed a substitute custodian; and after conducting a post-arrest hearing, ordered the defendants to post security in a substantial amount to obtain release of the vessel, pursuant to Supplemental Admiralty Rule E(5)).

Further, in *Merchants National Bank of Mobile v. Dredge General G. L. Gillespie*, 663 F.2d 1338 (5th Cir. Unit A Dec. 1981)—in which the Fifth Circuit affirmed the constitutionality of Supplemental Admiralty Rules C and E, concerning *in rem* seizure of a vessel without a preliminary judicial hearing, *see id.* at 1338—Judge Brown noted that "[s]eizure of a vessel pursuant to a valid lien has been necessary for centuries due to the wandering nature of a ship in commerce," and "it is questionable whether a judge *or magistrate* on a pre-arrest basis could fairly consider complicated transactions bearing on the ultimate enforcement of the asserted maritime lien," *id.* at 1344 (emphasis added).   Neither Rule C nor Rule E mentions "judge" or "magistrate"; both rules speak only in terms of "the court."   Thus, this decision provides at least implicit authority for a Magistrate Judge to act on behalf of "the court" in regard to Rules C and E.

[2]        The Chancery Court entered an order in October, 2011 "enjoining Guy Bussler from transferring or encumbering any interest in *inter alia* his ownership of Eagle Express

federal question, pursuant to § 1331—"specifically the existence of a quasi-maritime lien pursuant to 46 U.S.C. Section 31321"—and complete diversity of the parties, pursuant to § 1332.  (*Id.*, ¶¶ 1-2.)   Upon the filing of the verified complaint, the Court issued an order granting a motion to arrest the vessel (Doc. 12; *see also* Doc. 4), an order appointing Saunders Yachtworks substitute custodian (Doc. 11; *see also* Doc. 5), and an order authorizing the substitute custodian to relocate the vessel to its shipyard (Doc. 15; *see also* Doc. 14).[3]   On July 10, 2012, Defendant Eagle Express Charters, a Mississippi limited liability company, filed a verified statement of right or interest in the vessel (Doc. 16), pursuant to Supplemental Admiralty Rule C(6)(a), and provided the Affidavit of Kim F. Fulton, one of its members, in support (Doc. 17).   Eagle Express also moved, on that date, for vacation of the arrest of the vessel.

---

Charters, L.L.C." and, in November, 2011, a judgment recognizing a collateral assignment upon the vessel "enjoining Guy Bussler from transferring or encumbering any interest in *inter alia* his ownership of Eagle Express Charters[.]"   (*Id.*, ¶¶ 9-10.)   A notice of claim of lien, based on the November, 2011 Judgment, was filed with the United States Coast Guard in December, 2011. (*See id.*, ¶ 11.)

[3]      The plaintiffs' motion for arrest of the vessel (Doc. 4), filed simultaneously with their verified complaint, requested that—"[p]ursuant to Supplemental Admiralty Rule C(3)(a)" (*id.* at 1), which solely addresses arrest of a vessel or other property subject to an action—the vessel be arrested "and/or" the Court issue a writ of attachment.   Despite any confusion caused by the motion, the plaintiffs did provide a proposed order directing issuance of the writ of attachment and/or summons pursuant to Supplemental Admiralty Rule B(1) and Local Admiralty Rule 4.   (*See* Doc. 4-3; *see also* Doc. 4-4.)   The Court's order granting the motion (Doc. 12), however, only provided for arrest of the vessel.   Nonetheless, the parties have briefed the Rule B attachment issue, which was also argued at the July 20, 2012 Hearing.   And because the Court herein finds that the plaintiffs lack a valid *prima facie* admiralty claim and, thus, they are not entitled to a Rule B attachment, any inadvertent error resulting in the plaintiffs not receiving an order directing issuance of a writ of attachment and/or summons pursuant to Supplemental Admiralty Rule B(1) and Local Admiralty Rule 4 is harmless.

4

## Analysis

A.    Eagle Express Charters does not lack standing to move to vacate the arrest
      of the vessel.

Despite failing to brief the issue, the plaintiffs raised at the hearing the possibility

that, due to one of its two 50% owners (Guy Bussler) absconding to Costa Rica, Eagle

Express Charters was powerless to authorize a defense in this lawsuit, including filing

its motion to vacate the arrest of the vessel.   Eagle Express Charters,[4] however, has

provided its operating agreement, which provides in part that:

> [its] business shall be managed by its Membership, and the Members
> acknowledge that every Member is an agent of the Company for purposes
> of conducting its business and affairs, and the act of any Member,
> including, but not limited to, the execution in the name of the Company of
> any instrument for apparently carrying on in the usual way the business
> or affairs of the Company, binds the Company . . . .

(Doc. 26, Ex. A, Eagle Express Charters, LLC Limited Liability Company Agreement, ¶

VI.A.)

The operating agreement goes on to provide that certain actions, including

entering into a contract obligating the Company to pay an amount greater than $1,000,

may not be accomplished by a Member acting alone.   However, for purposes of

deciding this motion—and given the circumstances here: a Member of the Company

attempting to vacate the arrest of a vessel that is the Company's primary asset—the

---

[4]      The limited liability company was formed on March 30, 2004 when Bussler and
Fulton, who each "own 50% of all of the issued and outstanding membership interest" in the
company, executed an operating agreement, which "has not been modified or amended and
remains in full force and effect."   (Doc. 26, July 20, 2012 Fulton Aff., ¶¶ 1-2.)

Court refuses to speculate as to the agreement between Eagle Express Charters and its counsel, especially where, relatedly, the operating agreement provides a mechanism for Members to take "[a]ction required or permitted by applicable law or this Agreement to be taken at a Members' meeting" without first conducting a meeting.   (*See id.*, ¶ VI.C.) Therefore, the Court finds that Eagle Express Charters does not lack standing to assert this motion.

> B.     Because the Court lacks *in rem* jurisdiction over the vessel, its arrest, or <u>any attachment against it, must be vacated.</u>

There were initially three grounds to keep the vessel under arrest: (1) the plaintiffs claim a preferred mortgage in the vessel; (2) the plaintiffs have a "quasi-maritime lien" against the vessel; and (3) the plaintiffs attached the vessel pursuant to Supplemental Admiralty Rule B.   Because the plaintiffs have conceded (*see* Doc. 22 at 7-8) that Eagle Express Charters is correct that their claim of a preferred mortgage in the vessel "is manifestly without merit" (Doc. 18, ¶¶ 11-12), the Court will only address the second two grounds.

> 1.     The state-court-imposed lien against the vessel is unlike a maritime lien and, as such, cannot be enforced through the arrest of the <u>vessel *in rem*.</u>

Judge Rosenbaum, in *S & S Diesel Marine Services, Inc. v. M/V F-TROOP*, No. 11–60020–CIV, 2011 WL 1899402 (S.D. Fla. May 18, 2011), provided a comprehensive framework to utilize when determining whether the arrest of a vessel should be vacated:

6

"A maritime lien is a special property right in a ship given to a creditor by law as security for a debt or claim, and it attaches the moment the debt arises." *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010) (internal quotation marks omitted).   Maritime liens differ from common-law liens in that a maritime lien is not merely a security device to be foreclosed upon by default but, rather, the maritime lien converts the vessel into the obligor and permits injured parties to proceed against it directly.   *Id.*   The arrest of a vessel *in rem* is effectuated to enforce a maritime lien in favor of the party suing the vessel and seeking the arrest. *Industria Nacional Del Papel, CA v. M/V Albert F*, 730 F.2d 622, 625 (11th Cir. 1984) ("A court obtains *in rem* jurisdiction over a vessel when a maritime lien attaches to the vessel.").

Following the arrest of a vessel, the owner or other person claiming a right to the vessel may, pursuant to Supplemental Admiralty Rule E(4)(f), seek for the court to conduct a hearing and ultimately vacate the arrest.   In this regard, Supplemental Admiralty Rule E(4)(f) provides,

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

The purpose of the Rule E(4)(f) hearing is to "afford due process to a shipowner whose vessel has been arrested without the benefit of a post-arrest hearing." *Linea Naviera De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, 1999 WL 33218589 at *2 (M.D. Fla. Nov. 17, 1999) (citing *Amstar Corp. v. S/SAlexandros T.*, 664 F.2d 904, 910–12 (4th Cir. 1981)).

As the Supplemental Admiralty rules do not specify the form of the post-arrest hearing, the details of the proceeding are left to the Court's discretion.   *Salazar v. Atlantic Sun*, 881 F.2d 73, 79 (3d Cir. 1989). Nevertheless,

> [t]he post-arrest hearing is not intended to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant, and if so, to fix an appropriate bond.

*Salazar*, 881 F.2d at 79; *20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc.*, 992 F. Supp. 1423, 1427 (M.D. Fla. 1997) (quoting *Salazar*, 881 F.2d at

79); *George v. A 2005 Donzi Motor Yacht, Hull Identification Number DNAFA 008A505*, 2009 WL 3417707, at *1 (S.D. Fla. Oct. 22, 2009) (quoting *Salazar*, 881 F.2d at 79).   Nor should the court conduct a mini-trial at this stage of the case.   *See PDS Gaming Corp. v. M/V Ocean Jewell of St. Petersburg*, 2007 WL 2988798, at *1 (11th Cir. Oct. 15, 2007).

During the Rule E(4)(f) hearing, the plaintiff must shoulder the burden of showing why the arrest should not be vacated.   *Automarine, S.A. v. Asociacion Nacional de Agencias Distruidoras de Vehiculos, Inc.*, 2004 WL 5589735, at *1 (S.D. Fla. Aug. 5, 2004); *Linea Naviera De Cabotaje*, 1999 WL 33218589, at *2.   Towards this end, the plaintiff must prove that the arrest or attachment was supported by "reasonable grounds."   *George*, 2009 WL 3417707, at *1 (quoting *20th Century Fox Film Corp.*, 992 F. Supp. at 1427); *Linea Naviera De Cabotaje*, 1999 WL 33218589, at *2; *Danmar Lines, Ltd. v. Peticure, LLC*, 2009 WL 2135794, at * 2 (N.D. Tex. July 15, 2009). The plaintiff's burden is not onerous.   *George*, 2009 WL 3417707, at *1. Rather, ***the plaintiff must show only by a preponderance of the evidence that it is entitled to a valid maritime lien.***   *Id.*; *Seatrade Group N.V. v. 6,785.5 Metric Tons of Cement*, 2005 WL 3878026, at *2 (S.D. Tex. Dec. 7, 2005); *Vinmar Int'l Ltd. v. M/T Clipper Makishio*, 2009 WL 6567104, at *1 (S.D. Tex. Dec. 9, 2009).

Title 46, United States Code, Section 31342 governs the establishment of maritime liens and provides that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner — (1) has a maritime lien on the vessel . . . ."   The Eleventh Circuit has construed this provision to require a plaintiff claiming a maritime lien to prove that "(1) it provided 'necessaries' (2) at a reasonable price (3) to the vessel (4) at the direction of the vessel's owner or agent."   *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005) (citing *S.E.L. Maduro (Fla.), Inc. v. M/V Antonio De Gastaneta*, 833 F.2d 1477,1482 (11th Cir. 1987)). The United States Code further defines the term "necessaries" as including "repairs, supplies, towage, and the use of a dry dock or marine railway."   46 U.S.C. § 31301(4).   ***Taking into consideration the burden on a plaintiff seeking to uphold an* in rem *arrest based on a maritime lien, such a plaintiff must show by a preponderance of the evidence each of the elements set forth by the Eleventh Circuit in* Sweet Pea*.***

In determining whether a plaintiff has satisfied its burden of showing entitlement to a valid maritime lien, a court may consider evidence at the post-arrest hearing that was not before it at the time of the original

attachment in order to determine whether reasonable grounds existed for the arrest of the vessel. *Linea Naviera De Cabotaje*, 1999 WL 33218589 at *2. This circumstance stems from the fact that the court's role at the time of pre-judgment arrest involves quickly determining whether probable cause exists for the attachment. *Id.* at *4. At pre-judgment arrest, a plaintiff need only produce enough evidence to convince the court that reasonable grounds exist to "stop the ship." *Id.* In contrast, at a post-attachment hearing, both parties can present additional evidence, including testimony and affidavits, allowing the court to review a more complete record in order to decide whether the arrest should continue or be vacated. *Id.*

*Id.* at *8-9 (emphasis added and some alteration to internal citations).

While the plaintiffs concede that the lien imposed by the Chancery Court is not a maritime lien—which, based on the standard set forth above, should end this inquiry—they rely on *Provencher v. Binion & Sims, P.C.*, 401 F. Supp. 2d 740 (S.D. Tex. 2005), to show that a lien such as the one imposed by the Chancery Court can be enforced through this Court's *in rem* jurisdiction. (*See* Doc. 22 at 8-9.) The plaintiffs' argument is unpersuasive.

First, the plaintiffs make no attempt to explain how their lien, which is indisputably not a maritime lien, can be enforced like a maritime lien, through the arrest of the vessel *in rem*. *See S & S Diesel Marine Servs.*, 2011 WL 1899402, at *8 (noting that "'[a] maritime lien is a special property right in a ship given to a creditor by law'" and that such liens "differ from common-law liens [because they] convert[] ***the vessel into the obligor*** and permit[] injured parties to proceed against it directly" through "[t]he arrest of a vessel *in rem*") (quoting *Crimson Yachts*, 603 F.3d at 868) (citations omitted and emphasis added); *cf. World Fuel Servs., Inc. v. MAGDALENA*

*GREEN M/V*, 464 Fed. App'x 339, 341 (5th Cir. Mar. 14, 2012) (per curiam) ("'[T]he [Federal Maritime Lien Act] is premised on the concept that a vessel is a distinct entity, and therefore statutorily liable only for its own debts.' *See Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986) (en banc) ('The maritime lien concept thus somewhat personifies a vessel as an entity with potential liabilities independent and apart from the personal liability of its owner.').   As such, the MAGDALENA cannot be held liable for other outstanding debts of SESL.   Once the MAGDALENA's debt was paid, its liability to WFS was extinguished.").

    Moreover, assuming that a non-maritime lien can lead to the arrest of a vessel *in rem*,[5] the lien imposed by the Chancery Court is not the same as the lien imposed by the state court in *Provencher*.   There, the federal court stressed, repeatedly, that the state-court judgment was an ***agreed*** judgment that clearly evidenced the parties' intent to grant a security interest in the vessel, *see* 401 F. Supp. 2d at 743 ("While the ***Agreed*** Judgment may have been poorly written, the clear intention of the parties was to grant Defendants a security interest in the Pamina, a documented vessel, to ensure payment of Plaintiff's debt.") (emphasis added), and, ***as an agreed judgment***, it differed from a "regular state-court judgment" and could be enforced as if it was a contract between the parties, *see id.* ("The fact that the Parties specifically mentioned the Pamina as security for the debt owed to Defendants in an ***Agreed*** Judgment—not a regular state-court

_____

    [5]    The opinion in *Provencher* does not indicate whether the vessel at issue was arrested *in rem*.   Further, although it is likely that the court was proceeding under federal question jurisdiction, there is no explicit indication of that in the court's opinion.

judgment—distinguishes this case from those cases holding that a state-court judgment cannot create a lien on a vessel.") (citing *Fee-Crayton Hardwood Co. v. Richardson-Warren Co.*, 18 F.2d 617, 622-23 (W.D. La. 1927) (which the *Provencher* Court described as "enforcing equitable lien arising from explicit contractual language")) (emphasis in original); *see also id.* at 743 n.1 (noting that "[t]he Supreme Court has also found that a state-court judgment alone does not give rise to a maritime lien or even a judgment lien on personal property" (citing *The Lottawanna*, 87 U.S. 201 (1873); other citations omitted); 744 (owner of the vessel "specifically **agreed** to have the **Agreed** Judgment recorded" pursuant to 46 U.S.C. § 31343); *id.* ("**The Parties created a lien against the Pamina in the Agreed Judgment** . . . .") (emphases added).

Thus, the plaintiffs have failed to satisfy their burden of showing entitlement to a valid "maritime" lien.

> 2.      Attachment pursuant to Supplemental Admiralty Rule B fails because the plaintiffs lack a valid *prima facie* admiralty claim against <u>Eagle Express Charters.</u>

The plaintiffs next contend that the vessel should remain under arrest because it has been properly attached pursuant to Supplemental Admiralty Rule B.  (*See, e.g.,* Doc. 22 at 10-12.)   *See also Madredeus Shipping Co. Ltd. v. Century Bridge Chartering Co. Ltd.*, No. 00-414-CIV, 2000 WL 1205336, at *3 (S.D. Fla. Feb. 11, 2000) ("Whereas Supplemental Rule C provides for arrest, Supplemental Rule B provides for attachment. Although similar, they are distinguishable.") (citation omitted).   And, as this Court has held,

> [w]hen a defendant moves to vacate an attachment pursuant to Supplemental Admiralty Rule E(4)(f), the plaintiff bears the burden of showing that the filing and service requirements of Rules B and E were met and that 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.   If the plaintiff fails to demonstrate that it has met the requirements, the Court must vacate the attachment, but the plaintiff is not required to prove its case, only to meet a *prima facie* standard.

*Servicio Marina Superior, LLC v. Matrix Int'l Ltd.*, Civil Action No. 07–0770–KD–C, 2009 WL 734114, at *6 (S.D. Ala. Mar. 17, 2009) (citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), *overruled on other grounds, Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 61 (2d Cir. 2009)); *see also Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010) (Kozinski, C.J.) (citing *Aqua Stoli* for the same four conditions and noting that "[a]t a

Rule E hearing, defendant may argue that the attachment should be vacated because plaintiff failed to meet *one* of the four conditions for attachment") (emphasis added) (citing, *inter alia*, FED. R. CIV. P., SUPP. R. E. advisory committee's note to the 1985 amendments ("Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to the ship-owner a prompt post-seizure hearing at which he can attack the complaint, the arrest, the security demanded, *or any other alleged deficiency in the proceedings*.") (emphasis added)).

As mentioned above, one of the four conditions for Rule B attachment here is that the plaintiffs must prove that they have "a valid *prima facie* admiralty claim against

[Eagle Express Charters].”   *Servicio Marina Superior*, 2009 WL 734114, at *6; *Equatorial Marine Fuel Mgmt.*, 591 F.3d at 1210.   “Where a plaintiff lacks a valid *prima facie* admiralty claim, its request for relief pursuant to Rule B must be denied for lack of subject matter jurisdiction.”   *Euro Trust Trading S.A. v. Allgrains U.K. Co.*, No. 09 Civ. 4483(GEL), 2009 WL 2223581, at *2 (S.D.N.Y. July 27, 2009) (citing *Kalafrana Shipping Ltd. v. Sea Gull Shipping Co. Ltd.*, 591 F. Supp. 2d 505, 507 (S.D.N.Y. 2008); 28 U.S.C. § 1333(1)).   Importantly, “Rule B provides a ***specific procedural remedy***, not available in other federal civil cases, in cases that are within the jurisdiction of the federal court ***because of their maritime nature***.   The availability of the remedy thus turns on the nature of the federal jurisdiction over the case.”   *Id.* at *3 (emphasis added). Accordingly, if a court determines that a plaintiff’s claim is not maritime in nature, the attachment remedy afforded by Rule B is not available.

“To determine whether [a plaintiff’s] claims sound in admiralty, [courts] look to whether ‘the principal objective’ of the claimed contract or dealings ‘is maritime commerce.’”   *Equatorial Marine Fuel Mgmt.*, 591 F.3d at 1210 (quoting *Norfolk S. Ry. v. Kirby*, 543 U.S. 14, 25 (2004)).   And a claim is not maritime in nature if “the subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction.” *Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307, 312 (2d Cir. 2005).

Here, put succinctly, just because the plaintiffs' claim—entitlement to their brother's ownership interest in Eagle Express Charters and, accordingly, its primary asset, the vessel—involves a ship does not make it maritime in nature.

First, as discussed above, the claim emanates solely from a lien imposed pursuant to a state-court judgment, and a "claim based on [a] state[-]court judgment . . . does not under any circumstances give rise to maritime liens."  *Veverica v. Drill Barge Buccaneer No. 7*, 488 F.2d 880, 885 (5th Cir. 1974) (citing *The Willamette Valley*, 76 F. 838, 845 (N.D. Cal. 1896) (which held that "a common-law judgment of a state court, though accompanied with an attempted levy of execution, does not constitute such a lien which a court of admiralty will recognize . . .") (citing, in turn, *The Lottawanna*, 87 U.S. 201 (1873))).[6]

Further, even if the non-maritime lien here, which precipitates from the state-court judgment, was like the state-court judgment in *Provencher*, which—as discussed, at length, *supra*—it is not, and could be interpreted as an "agreement" for the (forced) sale of the plaintiffs' brother's interest in the Mississippi LLC and its vessel, "a contract solely for the sale of a vessel does not fall within the admiralty jurisdiction." *Aggelikos Prostatis Corp. v. Shun Da Shipping Group Ltd.*, 646 F. Supp. 2d 330, 335 (S.D.N.Y. 2009).   Therefore, a plaintiff suing to enforce such a contract would "not have

---

[6]     The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.   *See id.* at 1209.

a valid *prima facie* admiralty claim against [a] defendant . . . , and [any related] attachment must be vacated."   *Id.*

In *Aggelikos Prostatis*, the court discussed the Supreme Court's decision in *Kirby*, *see supra*, and applicable Second Circuit and Southern District of New York decisions, *see* 646 F. Supp. 2d at 332-35, and noted that

> [t]he only marine aspect to the contract [there was] that the object to be sold was a ship.   But in *Kirby* itself, the Supreme Court instructed that "[t]o ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute . . . ."   *Kirby*, 543 U.S. at 23.   Indeed, it would not comport with the "conceptual" approach dictated by *Kirby* to categorize contracts that are fundamentally sales contracts as maritime contracts simply because a ship is involved.

*Id.* at 334 (internal citation modified).   This is of course also the law in this Circuit.   *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1166 (11th Cir. 2009) ("[A] contract for the sale or construction of a ship is not within the federal courts' admiralty jurisdiction.") (citing *Richard Bertram & Co. v. The Yacht, Wanda*, 447 F.2d 966, 967 (5th Cir. 1971)); *see also The Yacht, Wanda*, 447 F.2d at 967-68 ("The mere fact that a ship is involved will not bring the cause within the jurisdiction of the admiralty court."); *cf. Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 240 (5th Cir. 2010) ("To determine whether a contract is maritime, we look to whether the 'nature of the transaction was maritime' and 'whether the services performed under the contract are maritime in nature.'") (quoting *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 611, 612 (1991)).

Finally, looking at the plaintiffs' claim here slightly differently, a dispute over who should have ownership of a vessel, in isolation, "does not relate in any meaningful

way to commerce on navigable waters or the use of the [vessel] as a [vessel]." *Newlin*, 623 F.3d at 240.   "As such, [such a] dispute . . . is not cognizable in admiralty." *Id.* (noting that the transfer of title dispute there was not "merely incidental to a boarder maritime contract between Gulf Coast and Newlin because [the] dispute [was] based on a discrete oral agreement (to transfer title) that is the ***very basis*** for Gulf Coast's breach of contract claim") (emphasis added).

Thus, the plaintiffs have failed to satisfy their burden to show that all the requirements for attachment—specifically, the key requirement that they have a valid *prima facie **admiralty*** claim—have been met.

## Conclusion

Based on the foregoing, the Court finds that, while it retains jurisdiction over the *in personam* claims in this matter pursuant to 28 U.S.C. § 1332, there is no basis, under either Supplemental Admiralty Rule B or Supplemental Admiralty Rule C, for *in rem* jurisdiction.   Accordingly, Eagle Express Charters' motion to vacate the arrest of the vessel (Doc. 18) is **GRANTED**, the arrest of the vessel is **VACATED**, and the appointment of Saunders Yachtworks as substitute custodian (*see* Doc. 11) is **RESCINDED**.   The Court **FURTHER ORDERS** that the *in rem* claims against the vessel alleged in the Verified Complaint (Doc. 1) be **DISMISSED**.

**DONE and ORDERED** this the 27th day of July, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**